**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LOGAN BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:22-cv-02815-DCN |
| vs. ) | |
| ) | **ORDER** |
| THE SECURE RELATIONSHIP, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on defendant The Secure Relationship, LLC's ("Secure Relationship") motion to dismiss, ECF No. 5. For the reasons set forth below, the court grants the motion.

## I.   BACKGROUND

This dispute arises out of Secure Relationship's alleged withholding of consulting wages from plaintiff Logan Berry ("Berry"). Secure Relationship is a limited liability company that provides relationship therapy and coaching for couples and relationship information through various media forms, including literary works. Secure Relationship is a Montana limited liability corporation with a principal place of business in Montana. Julie Menanno ("Mrs. Menanno") serves as a manager and member of Secure Relationship.

Berry is publishing consultant who provides services as an independent contractor. Prior to working as an independent contractor, Berry worked for Palmetto Publishing Group, a South Carolina publisher. Mrs. Menanno first became familiar with Berry in early 2021 when she, in her capacity as a member and manager of Bozeman Therapy and Counseling, LLC, met with Palmetto Publishing Group to learn about their

1

book publishing operation. Around that time, Mrs. Menanno was exploring the possibility of self-publishing her book through Secure Relationship, and while she was in South Carolina, she discussed the advantages of self-publishing versus traditional book publishing with Berry. According to Secure Relationship, Berry held himself out as a sophisticated consultant in the areas of publishing, internet marketing, and monetization. Thereafter, in January 2022, Berry traveled to Montana to meet with Secure Relationship's representatives. Secure Relationship claims that the visit was intended to allow Berry to pitch his role as a consultant, while Berry claims that the visit was meant discuss the parameters of the position, which he had purportedly already been offered over a phone call with Mrs. Menanno.

According to Berry, the parties reached an agreement on the terms of Berry's compensation, which included various commissions for book sales, partnership deals, podcasts, and other avenues of distribution. Upon Berry's return to South Carolina, where he resides, the parties began to finalize the terms of Berry's role and compensation. Secure Relationship, on the other hand, claims that no formal agreement was ever reached between the parties. Berry allegedly began performing work for Secure Relationship. Secure Relationship ultimately obtained a book publishing deal for Mrs. Menanno's book worth at least $870,000. Berry alleges that after helping to generate revenue for Secure Relationship, Berry was abruptly terminated without cause in April 2022.

On June 3, 2022, Berry filed his complaint against Secure Relationship in the Charleston County Court of Common Pleas, alleging a violation of the South Carolina Wage Payment Act and breach of contract. ECF No. 1-1, Compl. On August 22, 2022,

Secure Relationship removed the action to this court. ECF No. 1. On August 29, 2022, Secure Relationship filed its motion to dismiss for lack of jurisdiction. ECF No. 5. Berry responded in opposition on September 12, 2022, ECF No. 6, and Secure Relationship replied on September 20, 2022, ECF No. 7. The court held a hearing on the motion on October 27, 2022. ECF No. 9. As such, the motion has been fully briefed and is now ripe for review.

## II. STANDARD

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. at 676. To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished table opinion); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993); Combs, 886 F.2d at 676. The court, however, need

not "credit conclusory allegations or draw farfetched inferences." Masselli, 215 F.3d 1320 (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### III.   DISCUSSION

Secure Relationship moves to dismiss Berry's complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Thus, in evaluating a challenge to personal jurisdiction, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, it must find that the forum state's long-arm statute authorizes the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if its exercise of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002); Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005). Consequently, the two-step inquiry compresses into a single question: whether the court's exercise of personal jurisdiction comports with due process. Sonoco Prod. Co. v. Inteplast Corp., 867 F. Supp. 352, 354 (D.S.C. 1994).

Personal jurisdiction over a nonresident defendant can be either specific or general. ESAB, 126 F.3d at 623–24. General jurisdiction is exercised on the basis of the defendant's "continuous and systematic" contacts within the state, even when the suit is unrelated to the defendant's contacts within that state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

Specific jurisdiction is exercised when a cause of action is related to the defendant's activities within the forum state.  See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416.  Berry does not argue that the court has general jurisdiction over Secure Relationship.  Instead, Berry proceeds directly to arguing that "performance of the contract in South Carolina" prevails over the absence of Secure Relationship's physical contacts in the state.  ECF No. 6 at 9–10.  As such, the court turns to the issue of specific jurisdiction.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state.  Helicopteros, 466 U.S. at 414.  Exercising specific jurisdiction does not comport with due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction comports with notions of "fair play and substantial justice."  Burger King v. Rudzewicz, 471 U.S. 462, 475–76 (1985).  A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King, 471 U.S. at 475.  Upon a showing of the defendant's purposeful availment, the fairness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy.  World-Wide Volkswagen, 444 U.S. at 292.

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed herself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King, 471 U.S. at 476–77). To show that the exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

Berry argues that Secure Relationship purposefully availed itself of the privileges of conducting activities in South Carolina and because "Defendant physically met Plaintiff in South Carolina, knew that Plaintiff was and would continue to be located in Charleston, South Carolina, made an employment offer to Plaintiff in South Carolina, paid Plaintiff in South Carolina, and routinely communicated with Plaintiff while he was in South Carolina about their work." ECF No. 6 at 8–9. The court considers each prong of the specific jurisdiction test below.

### A. Purposeful Availment

Under the first prong, Berry must demonstrate that Secure Relationship purposefully availed itself to being sued in South Carolina by deliberately directing activities to the state. The Fourth Circuit has relied on several nonexclusive factors to determine whether a corporate defendant has purposely availed itself of a forum in the context of a business relationship, including:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).

### 1. Factors 1 and 2

The first and second factors weigh against the exercise of jurisdiction. Secure Relationship is a Montana limited liability corporation with its principal place of business in Montana. It does not have any members that conduct business activities in South Carolina. ECF No. 5-2, Mario Menanno Aff. ¶ 3–4. It does not own or lease any real estate or property in South Carolina. ECF No. 7-1, Mario Menanno Supp. Aff. ¶ 3.

### 2. Factor 3

As relevant to the third factor, Secure Relationship claims it "has never directly solicited, initiated[,] or directed any business activities to . . . South Carolina." Mario Menanno Aff. ¶ 4. Berry disputes this and claims that Mrs. Menanno, on behalf of Secure Relationship, "solicited Plaintiff to work and enhance the Defendant's business." ECF No. 6 at 11. Mrs. Menanno's actions are certainly relevant to the jurisdictional inquiry as the "activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction." Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 722 (D.S.C. Jan. 30, 2017) (citing Grand Ent. Grp. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993)). But Secure Relationship maintains that Mrs. Menanno first encountered

7

Berry while he was working for Palmetto Publishing Group. At the time, Mrs. Mennano was acting in her capacity as member and manager of another company, Bozeman Therapy and Counseling, LLC. In response, Berry suggests, without basis, that Mrs. Menanno's dealings on behalf of Bozeman Therapy and Consulting were commingled with her dealings for Secure Relationship, but that claim amounts to a conclusory allegation that the court need not credit. The affidavits and supporting documents indicate that Mrs. Menanno traveled to South Carolina to meet with Palmetto Publishing Group and thus met Berry by happenstance. Even construing the evidence in the light most favorable to Berry—as the court must—the court finds that Secure Relationship did not reach into the forum to specifically solicit Berry's services.

Even if the court determined that Secure Relationship "affirmatively recruit[ed] the employee while a resident of the forum state," Perry v. Nat'l Ass'n of Home Builders of U.S., 2020 WL 5759766, at *4 (D. Md. Sept. 28, 2020), it would decline to exercise jurisdiction. The solicitation factor is significantly outweighed when the plaintiff does not allege that "[the employer] recruited h[im] for h[is] job because []he resided in [the forum state]." See id. at *5 (emphasis added) (finding that the court lacked specific jurisdiction because an employee's decision to conduct her work from Maryland, even if known to and supported by the employer, constituted "unilateral activity" that does not establish purposeful availment); see also Wright v. Zacky & Sons Poultry, LLC, 105 F. Supp. 3d 531, 538 (M.D.N.C. May 15, 2015) (determining that despite the fact that the employer "admit[ted] that it initially contacted [the plaintiff] about employment while he resided in North Carolina . . . and negotiated the terms of employment via email while [he] resided in the state," such facts "fail to make out a prima facie showing of personal

8

jurisdiction"). Here, there is no evidence that Secure Relationship hired or considered hiring Berry because he was a resident of South Carolina. In fact, the evidence suggests the exact opposite: Berry's residence "played no role" in Secure Relationship's decision to engage him and Berry was "free to live where he pleased." Mario Menanno Supp. Aff. ¶ 3. Thus, the court finds that this factor weighs against the exercise of jurisdiction.

### 3. Factor 4

The fourth factor concerns whether the defendant deliberately engaged in significant or long-term business activities in the forum state. Even in the light most favorable to Berry, Secure Relationship's business activities in the state were limited to talking with Berry about working for the company. Beyond that contact—which the court discusses further below—Secure Relationship did not engage in significant business in South Carolina and "had no plans or intentions to expand its physical operations outside of Montana." Id. ¶ 4. Berry disagrees, arguing that even though Secure Relationship does not have a physical presence in South Carolina, "the reality of modern commerce is that advances in technology have made it so that a physical presence is no longer a necessary or essential part of negotiating, agreeing to, or [performing under] a commercial contract." ECF No. 6 at 9–10. Even so, a single contract with an in-state entity will rarely establish "significant" business activities in the forum state, particularly where the contract was with a single individual or entity and does not require continuing obligations between the defendant and other residents of the forum. See Pet Specialties, LLC v. Navisiontech, Inc., 2019 WL 4773623, at *5 (M.D.N.C. Sept. 30, 2019). For purposes of the fourth factor, Secure Relationship did not have significant or long-term business activities in South Carolina.

#### 4. Factor 5

The fifth factor looks to whether the parties agreed that South Carolina law would govern disputes related to a contractual agreement. The parties dispute whether an employment agreement existed, but there is no dispute that a formal, written agreement was never created. The closest document to a contract that Berry produced is an email written from Berry to Mario Menanno ("Mr. Menanno") and Mrs. Menanno in which Berry proposes the terms of his compensation. ECF No. 6-2. Mr. Menanno responded to the email, noting that he and Mrs. Menanno would "review and get back to you asap." ECF No. 7-2. Regardless of whether those communications created a contractual obligation, the parties did not agree that South Carolina law would govern any dispute between them.

#### 5. Factors 6 and 7

The sixth factor asks whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship. As discussed earlier under the factor referring to solicitation, the jurisdictional evidence does not support the conclusion that Secure Relationship, through Mrs. Menanno, purposefully reached into South Carolina to contact Berry, a resident of the state.

Berry then argues that Secure Relationship nonetheless entered into a contract with a South Carolina resident. In response, Secure Relationship robustly disputes that the parties reached any sort of agreement, much less that it hired Barry. But to resolve the issue of jurisdiction, the court need not decide whether an employment relationship existed, which is the core controversy in this lawsuit. Even if the court assumed the existence of a contract, it is important to note that "[a] contract with a resident of a forum

state does not automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." Le Bleu Corp. v. Standard Capital Grp., Inc., 11 F. App'x. 377, 380 (4th Cir. 2001) (citing Burger King, 471 U.S. at 478). Certainly, a contract may be some evidence that the quality and nature of Secure Relationship's connection to the forum was not random, fortuitous, or attenuated, but Berry must prove other elements of purposeful availment.

This is contemplated by the seventh factor, which looks to the nature, quality and extent of the parties' communications about the business being transacted. In support of his position that the purported agreement between the parties "was much more than a single act or transaction," Berry argues that once "the initial agreement was reached, such an agreement necessitated a substantial 'back and forth' contact between the two sides." ECF No. 6 at 11. However, the court does not find that the nature of the electronic communications about the position evinces an intent on Secure Relationship's part to establish a business relationship in South Carolina. Rather, the evidence suggests that the most important communication—where the parties allegedly discussed "the parameters of [their] working relationship, ECF No. 6-1, Berry Aff. ¶ 6—took place when Berry traveled to Montana to meet with Secure Relationship's representatives. Berry argues that except for that trip to Montana, "all interactions, communications, work performed, and business transacted . . . occurred in Charleston County[,] South Carolina," id. ¶ 7, but this controversy arises out of the compensation terms that Secure Relationship allegedly promised to Berry. Based on the email Berry wrote to Mr. and Mrs. Menanno, which he relies upon to set forth the compensation allegedly owed to him, Berry provided the terms in the email to "recap . . . what we discussed at dinner," referring to the meeting in

11

Montana. ECF No. 6-2. Critically, the dispute thus centers around terms that were discussed in Montana, not South Carolina.

Even if the other communications referenced by Berry were indeed extensive, such "extensive communications are not dispositive of the defendant's purposeful availment, unless the parties had an extensive, substantive, or continuing relationship that tied their behavior to the forum state." Alacrity Renovation Servs., LLC v. Long, 2016 WL 4150011, at *7 (W.D.N.C. Aug. 3, 2016) (citations omitted). In other words, the communication in Montana, more so than any other communications, created "a substantial nexus" between Secure Relationship and Berry, and thus, these two factors weigh against personal jurisdiction. See id. (finding that personal jurisdiction was lacking where the parties negotiated for a contract that called for performance primarily outside the state, "even though the relationship between the parties required some contact within the forum state").

6. **Factor 8**

Under the eighth and final factor, the court looks to whether the performance of contractual duties was to occur within the forum. Berry presents two arguments, first arguing that Secure Relationship "knowingly established an ongoing business relationship with a South Carolina resident for consultation," suggesting that this factor weighs in his favor because he provided consulting services from South Carolina. Again, Secure Relationship disputes that it formally retained Berry, but assuming it did, courts have determined that contacts based on the location of the employee are, without more, insufficient to make a prima facie showing that survives the jurisdictional challenge. In Higgins v. Catalyst Exhibits, the court determined that a plaintiff failed to present a prima

12

facie showing of specific jurisdiction where the defendant did not hire the plaintiff with the intent for him to transact business or supply services in South Carolina; rather, the evidence suggested that the plaintiff "simply worked remotely." 2021 WL 3886597, at *4 (D.S.C. Aug. 31, 2021). Thus, mere knowledge that an employee is working in another state is not enough to confer jurisdiction. In Higgins, the court went on to explain that "even if 'defendants were fully aware that the plaintiff had relocated to [the forum state], this is insufficient to cause defendants to be subject to the jurisdiction of [that state's] courts[] when 'there was no suggestion that the contract specified where the work was to be performed.'" Id. (quoting File Image Servs., LLC v. Klein, 2009 WL 2412443, at *2 (E.D. Wis. 2009)) (cleaned up). Here, even if an agreement between the parties existed, there is no evidence that Secure Relationship specified where Berry's work had to be performed. Indeed, the only evidence on the issue indicates that Berry's work could have been done anywhere. See Mario Menanno Supp. Aff. ¶ 3 (explaining that "[t]he nature of Berry's consulting services could be performed from anywhere" and his residence in South Carolina "played no role in the company's decision to engage him").

Additionally, Berry argues that his work for Secure Relationship was meant to enhance Secure Relationship's business and presence on the internet, including social media, which "touches every part of the country." ECF No. 6 at 11. But Berry's claim that his work was intended to have a national reach belies rather than supports his position. A defendant's mere act of placing information on the internet is not sufficient to subject that defendant to personal jurisdiction in each state where that information can be accessed. See Young v. New Haven Advocate, 315 F.3d 256, 263 (4th Cir. 2002)

("[T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience."). The same is true of defendants who maintain social media sites. See FireClean, LLC v. Tuohy, 2016 WL 3952093, at *6 n.12 (E.D. Va. July 21, 2016) (noting that contacts based on "readers' ability to 'like' or comment" do not indicate purposeful targeting of an audience in a forum state and collecting cases). Finally, to the extent that Berry argues that his work ultimately allowed Secure Relationship to distribute its books to South Carolina through the internet, the general sale of products over the internet cannot demonstrate that Secure Relationship took actions purposefully directed toward South Carolina. See Shamsuddin v. Vitamin Rsch. Prods., 346 F. Supp. 2d 804, 815 (D. Md. 2004) (citation omitted). Thus, even though Berry resides in South Carolina, the performance of his duties cannot be considered to have occurred in the state, and the eighth factor weighs against Berry.

Altogether, Secure Relationship's contacts with the state are based on a single consulting contract with Berry. The pleadings, affidavits, and other supporting documents show, even in the light most favorable to Berry, that the compensation in the consulting contract was largely negotiated outside of South Carolina and involved prospective consulting work that would not have been fixated on business in South Carolina. For those reasons, the court finds that the first prong of specific jurisdiction has not been met.

### B. Arising Out Of or Relating To

Next, Berry argues that the second prong of the specific jurisdiction test is satisfied because his claims arise from Secure Relationship's forum-state activities. This

14

prong is satisfied if the "activity in the forum state is the genesis of [the] dispute," or "if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 303 (4th Cir. 2012) (alteration in original and citations omitted).

     As established under the preceding discussion, there are no forum-state activities that rise to the level of showing Secure Relationship purposefully availed itself of the privileges of conducting activities in South Carolina, thus ending the jurisdictional inquiry. Even if the court considered the residual forum-state contacts alleged by Berry, those contacts must be related to Berry's claims for a violation of the South Carolina Wage Payment Act and breach of contract. Berry claims that except for the trip to Montana, all the other communications between the parties occurred in Charleston County, South Carolina. Berry Aff. ¶ 7. This includes the fact that Berry was in Charleston County, South Carolina when he allegedly accepted the verbal offer from Mrs. Menanno via phone call. Id. ¶ 6. But as discussed earlier, Berry's own evidence—the February 3 email—indicates that the terms of compensation had already been established by the time Berry returned to South Carolina. See ECF Nos. 6-2, 7-2. Berry's claims arise out of Secure Relationship's alleged failure to compensate Berry the amount set forth in those terms. Thus, the remaining communications did not form the genesis of the dispute. In other words, because the subsequent communications are not directly related to Berry's lost wages or Secure Relationship's alleged breach of contract, those contacts are insufficient to support specific jurisdiction over Secure Relationship. Thus, Berry has failed to prove the second prong of personal jurisdiction as well.

### C. Constitutional Reasonableness

The third consideration under the specific jurisdiction analysis is meant to "protect[] a party from 'litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to [its] opponent.'" ESAB Grp. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (quoting Burger King, 471 U.S. at 478) (alterations in original). "To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King, 471 U.S. at 477). In determining whether jurisdiction is constitutionally reasonable, courts evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Nolan, 259 F.3d at 217 (quoting Burger King, 471 U.S. at 477).

Because Berry has not alleged purposeful availment or claims that arise out of Secure Relationship's relevant forum-state activities, the court need not address the third requirement for specific jurisdiction. Even if the court were to consider the prong, the factors are neutral at best, and if anything, weigh against Berry. Secure Relationship is a Montana-based corporation, and its counsel represented at the hearing that it is a small, family-run limited liability company that consists of Mr. and Mrs. Menanno and very few others. Its members would likely face a significant burden if it had to litigate in South Carolina. Additionally, there is a possibility that the court would analyze the existence of

an agreement by applying Montana law.[1]  If that were the case, the court would have minimal interest in adjudicating the merits of the case.  Ultimately, because Berry's asserted contacts are insufficient to support personal jurisdiction, the first two factors swing definitively in favor of granting Secure Relationship's motion to dismiss for lack of jurisdiction and the court need not fully decide the issue of constitutional reasonableness.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss for lack of personal jurisdiction.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**November 4, 2022**
**Charleston, South Carolina**

---

[1] Under South Carolina's choice-of-law rules, "the place of contracting is the place where the minds of the parties meet or the place where the final act occurred which made a binding contract."  O'Briant v. Daniel Constr. Co., 305 S.E.2d 241, 243 (S.C. 1983) (citing Arant v. First S. Co., 153 S.E.2d 919 (1967)).  It is unclear where the "final act" here occurred, if at all, but there is certainly a possibility it could be deemed to have occurred in Montana.  The court does not reach a conclusion on this issue but merely notes it for purposes of the constitutional reasonableness analysis.