**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LOGAN BERRY, ) <br> ) <br>             Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE SECURE RELATIONSHIP, LLC, ) <br> ) <br>             Defendant. ) <br> _____) | No. 2:22-cv-02815-DCN <br><br> **ORDER** |

This matter is before the court on plaintiff Logan Berry's ("Berry") motion to alter or amend judgment, ECF No. 12. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This dispute arises out of The Secure Relationship, LLC's ("Secure Relationship") alleged withholding of consulting wages from Berry. Secure Relationship is a limited liability company that provides relationship therapy and coaching for couples and relationship information through various media forms, including literary works. Secure Relationship is a Montana limited liability corporation with a principal place of business in Montana. Julie Menanno ("Mrs. Menanno") is a manager and member of Secure Relationship.

Berry is a publishing consultant who provides services as an independent contractor. Prior to working as an independent contractor, Berry worked for Palmetto Publishing Group, a South Carolina publisher. Mrs. Menanno first met Berry while he was working with Palmetto Publishing Group. Upon meeting, Berry allegedly held himself out as a sophisticated consultant in the areas of publishing, internet marketing,

1

and monetization. Thereafter, in January 2022, Berry traveled to Montana to meet with Secure Relationship's representatives. Secure Relationship claims that the visit was intended to allow Berry to pitch his role as a consultant, while Berry claims that the visit was meant discuss the parameters of the position, which he had purportedly already been offered over a phone call with Mrs. Menanno.

According to Berry, the parties reached an agreement on the terms of Berry's compensation, which included various commissions for book sales, partnership deals, podcasts, and other avenues of distribution. Upon Berry's return to South Carolina, where he resides, the parties allegedly began to finalize the terms of Berry's role and compensation. Secure Relationship, on the other hand, claims that no formal agreement was ever reached between the parties. Berry claims he began performing work for Secure Relationship. Secure Relationship ultimately obtained a book publishing deal for Mrs. Menanno's book worth at least $870,000. Berry alleges that after helping to generate revenue for Secure Relationship, Berry was abruptly terminated without cause in April 2022.

On June 3, 2022, Berry filed his complaint against Secure Relationship in the Charleston County Court of Common Pleas, alleging a violation of the South Carolina Wage Payment Act and breach of contract. ECF No. 1-1, Compl. On August 22, 2022, Secure Relationship removed the action to this court. ECF No. 1. On November 4, 2022, the court granted Secure Relationship's motion to dismiss for lack of personal jurisdiction. ECF No. 10. On December 2, 2022, Berry filed his motion to alter or amend judgment. ECF No. 12. Secure Relationship responded in opposition on

December 16, 2022, ECF No. 13, and Berry replied on December 28, 2022, ECF No. 14. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment. The rule provides an "extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks and citation omitted). The Fourth Circuit recognizes "only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." Wilder v. McCabe, 2012 WL 1565631, at *1 (D.S.C. May 2, 2012) (citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)). To qualify for reconsideration under the third exception, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., 1995 WL 520978, *5 n.6 (4th Cir. 1995) (unpublished)). Ultimately, the decision whether to reconsider an order resulting in judgment pursuant to Rule 59(e) is within the discretion of the district court. See Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir. 1995).

## III.  DISCUSSION

Secure Relationship requests that the court alter or amend its order of dismissal pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 12 at 1. In its order of dismissal, the court determined that it lacked personal jurisdiction over Secure

3

Relationship under both South Carolina's long-arm statute and the Due Process Clause. Specifically, the court found, contrary to Berry's assertion, that it lacked jurisdiction under the Fourth Circuit's three-part test for evaluating the propriety of specific jurisdiction. ECF No. 10 at 4–5. Those three factors are: (1) whether the defendant purposely availed herself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citations omitted).

In the instant motion, Berry insists that the court possesses specific jurisdiction over Secure Relationship. Berry argues that two of the three potential grounds for relief under Rule 59(e) are met here. First, Berry argues that an alteration is needed to correct "manifest errors of fact and law." ECF No. 12 at 1–2. Second, Berry purports to have acquired new evidence illustrating said errors.

Both of Berry's arguments target the same finding in the court's order of dismissal. Namely, Berry takes issue with the court's statement in its order that "Mrs. Menanno first became familiar with Berry in early 2021 when she, in her capacity as a member and manager of Bozeman Therapy and Counseling, LLC, met with Palmetto Publishing Group to learn about their book publishing operation." ECF No. 10 at 1–2. Berry claims that the court solely relied on the affidavit of Mario Menanno ("Mr. Menanno") to reach the conclusion, but Mr. Mennano's account is false and unreliable. Instead, Berry claims that Mrs. Menanno traveled to South Carolina in June 2021 "on behalf of [Secure Relationship], NOT Bozeman Therapy and Consulting LLC." ECF No.

4

12 at 3 (emphasis in original).  Berry also presents new evidence to support the fact that Mrs. Menanno was acting in her capacity as a member of Secure Relationship when she met Berry and allegedly recruited him to work for the company.

As a preliminary matter, Berry's arguments are untimely.  "Rule 59(e) motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"  Melendez v. Sebelius, 611 F. App'x 762, 764 (4th Cir. 2015) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008)).  Setting aside Berry's arguments about newly-discovered evidence for the moment, the issue of whether Mrs. Menanno—on behalf of Secure Relationship—initiated contact with Berry in South Carolina was already litigated in Secure Relationship's motion to dismiss.  Berry is correct that the court's order noted that Mrs. Menanno encountered Berry while she "was acting in her capacity as member and manager of another company, Bozeman Therapy and Counseling, LLC."  ECF No. 10 at 8.  But critically, the court observed that the primary purpose of Mrs. Menanno's visit to South Carolina was to meet with Palmetto Publishing, not Berry.  At the hearing, the court specifically asked counsel for Berry whether it was fair to say that Mrs. Menanno had thus encountered Berry by happenstance, and Berry did not meaningfully dispute that characterization.  Any arguments to the contrary at this stage are, by rule, barred.

Even in considering the new evidence presented by Berry, the court is unmoved.  Berry first submits that Mrs. Menanno acquired an American Express credit card that she solely used for Secure Relationship's business.  ECF No. 12-1, Berry Supp. Aff. ¶ 2.  A transaction receipt indicates that Mrs. Menanno used the same American Express card to pay Palmetto Publishing for its services during her trip to South Carolina.  ECF No. 12-2.

According to Berry, the receipt illustrates that Mrs. Menanno traveled to South Carolina on behalf of Secure Relationship.[1]

Next, Berry presents the Certificate of Fact issued at the time of incorporation for Secure Relationship and for Bozeman Therapy & Consulting LLC ("Bozeman Therapy"). Berry points out that Secure Relationship's Certificate of Fact states that the limited liability company was formed for the purpose of "[b]ook sales" and other business. ECF No. 12-4. Conversely, Bozeman Therapy's Certificate of Fact declines to list any purpose of formation. There is no dispute that Mrs. Menanno engaged Palmetto Publishing to assist with printing needs and help with self-publishing a book, so based on the certificates, Berry asserts that Mrs. Menanno could only have travelled to South Carolina to meet with Palmetto Publishing on behalf of Secure Relationship.

Berry's evidence and supporting arguments fail to distinguish the forest from the trees. Certainly, Berry's evidence supports finding that Mrs. Menanno traveled to South Carolina on behalf of Secure Relationship, not Bozeman Therapy. But critically, Berry's evidence does not speak to whether Mrs. Menanno reached into the state to initiate contact with <u>Berry</u>, as contemplated by the specific jurisdiction test. As the court explained in its order of dismissal, courts in the Fourth Circuit look to eight nonexclusive factors to determine whether a corporate defendant has purposefully availed itself to being sued in a forum. ECF No. 10 at 7–8 (citing <u>Universal Leather, LLC v. Koro AR,</u>

---

[1] In response to the motion to alter or amend, Secure Relationship submits its own competing evidence, claiming, <u>inter alia</u>, that the American Express card was not used to pay Palmetto Publishing for its services and that Bozeman Therapy had its own separate accounts which were used to pay for Mrs. Menanno's flight and expenses on the trip. ECF No. 13 at 9. The court assumes, for purposes of this motion, that Berry's account is correct because even in doing so, the court finds that Berry is not entitled to relief.

S.A., 773 F.3d 553, 560 (4th Cir. 2014)).  Berry argues that the court's mistake of fact regarding Bozeman Therapy discolored its findings under Factors 3 and 6.  ECF No. 12 at 3.  Upon review, however, Berry's arguments fail to paint the full picture.

For example, Berry fails to address the entirety of the court's analysis under Factor 3.  There, the court explained that even if the court went so far as to determine that Secure Relationship affirmatively recruited Berry while he was a resident of South Carolina,[2] the court would still decline to exercise jurisdiction.  The solicitation factor is significantly outweighed when a plaintiff does not allege that "[the employer] recruited h[im] for h[is] job because []he resided in [the forum state]."  Perry v. Nat'l Ass'n of Home Builders of U.S., 2020 WL 5759766, at *4 (D. Md. Sept. 28, 2020) (emphasis added).  As the court went on to explain, there is no evidence that Secure Relationship recruited Berry because he was a resident of South Carolina.  In fact, the evidence suggests the exact opposite: that Berry's residence "played no role" in Secure Relationship's decision to engage him and Berry was "free to live where he pleased."  ECF No. 7-1, Mario Menanno Supp. Aff. ¶ 3.  Nothing in Berry's evidence, new or old, contradicts those facts.  In short, Berry trains his sights on the fact that Mrs. Menanno was working for Secure Relationship while she was in South Carolina when the outcome-determinative fact is that Mrs. Menanno did not affirmatively seek out Berry in South Carolina.

---

[2] And to be clear, the court is not convinced—even with Berry's evidence—that Secure Relationship affirmatively entered South Carolina to recruit Berry.  Assuming Mrs. Menanno reached out to Palmetto Publishing on behalf of Secure Relationship, the evidence still suggests that she only met Berry because he was an employee of Palmetto Publishing.  See ECF No. 6-1, Berry Aff. ¶ 3 ("I came to know Julie Menanno through my previous employment at Palmetto Publishing Group . . . as Ms. Menanno was looking to self-publish a book through Palmetto Publishing Group.").

Berry makes a similar error under the sixth factor. That factor concerns whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship. Accepting Berry's evidence as true and viewing it in the light most favorable to him, the court accepts that Secure Relationship (via Mrs. Mennano) made in-person contact with Berry. But Berry again overlooks the second portion of the court's analysis, where the court stressed the need to look to the nature, quality, and extent of the parties' communications about the business being transacted in tandem with that factor. The court noted that under those considerations, the evidence suggested that the most important communications took place when Berry traveled to Montana to meet with Secure Relationship's representatives, not in South Carolina. ECF No. 10 at 10–11. Therefore, the court does not find that it committed clear error or manifest injustice in determining that Factor 6 weighed against jurisdiction.[3]

Finally, even if the court were to assume that the factors highlighted by Berry weighed in his favor, the court still finds that its order of dismissal did not result in clear error or manifest injustice. Beyond purposeful availment, the court also determined that Berry's claims did not arise out of or relate to Secure Relationship's contacts. See ECF No. 10 at 14–15 (explaining that Berry's South Carolina Wage Payment Act and breach of contract claims arise out of discussions over Berry's compensation terms, which

---

[3] Similarly, Berry argues that the court misconstrued its argument about the "ongoing obligation and relationship between the [d]efendant and a South Carolina resident." ECF No. 12 at 4. But as the court explained under Factor 8 and reiterates here, it "is insufficient to cause defendants to be subject to the jurisdiction of [a state's] courts when there was no suggestion that the contract specified where the work was to be performed." Higgins v. Catalyst Exhibits, 2021 WL 3886597, at *4 (D.S.C. Aug. 31, 2021) (cleaned up). The more pertinent inquiry is whether a plaintiff like Berry could only have fulfilled his duties in the forum state, or if Berry's work instead had more of a national reach.

occurred in Montana).  In the instant motion, Berry does not address the court's findings regarding the other specific jurisdiction prongs, but to show that the exercise of specific jurisdiction over a defendant comports with due process, a plaintiff "must prevail on each prong."  <u>Perdue Foods LLC v. BRF S.A.</u>, 814 F.3d 185, 189 (4th Cir. 2016).  Based on those grounds, the court does not find that it was manifestly unjust to decline jurisdiction and dismiss this action.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to alter or amend.

**AND IT IS SO ORDERED.**

*[signature]*

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 19, 2023**
**Charleston, South Carolina**